Stephanie A. Strickler (IL6314089)
166 W. Washington St., Suite 300
Chicago, IL 60602
(312) 334-3465 Telephone
(312) 334-3434 Facsimile
sstrickler@messerstilp.com
PRO HAC VICE

Attorney for Defendant
SQUARETWO FINANCIAL CORP.
CACH, LLC
MANDARICH LAW GROUP, LLP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA JOAQUIN, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>SQUARETWO FINANCIAL CORPORATION; CACH, LLC; AND, MANDARICH LAW GROUP, LLP,<br><br>　　　　　Defendants. | CASE NO. 2:15-cv-06427-MWF-JC<br><br>**DEFENDANTS SQUARETWO FINANCIAL CORPORATION AND CACH, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 26, 2015 at 10:00 a.m., or soon thereafter as the matter may be heard, in the courtroom of the Honorable Michael W. Fitzgerald of the above United States District Court, located at 312 N Spring Street, Los Angeles, CA 90012, Defendant CACH, LLC will and hereby do move

this Court, pursuant to 9 U.S.C. §§ 4 and 5, for an Order to compel Plaintiff Veronica Joaquin to arbitrate her individual claims in this action and to stay this action.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all records on file with this Court, and such further oral and written argument as may be presented at, or prior to, hearing on this matter.

DATED: October 8, 2015　　　　SQUARETWO FINANCIAL CORPORATION
　　　　　　　　　　　　　　　　CACH, LLC


　　　　　　　　　　　　　　　By　/s/Stephanie A. Strickler
　　　　　　　　　　　　　　　　　Stephanie A. Strickler
　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　SquareTwo Financial Corporation
　　　　　　　　　　　　　　　　　CACH, LLC

Defendant CACH, LLC hereby submits its Motion to Compel Arbitration:

# I.
# INTRODUCTION

This case arises out of an underlying debt collection action. *See* State Court Complaint attached as Exhibit B. Ms. Joaquin owed $3,911.26 on a credit card she obtained with GE. *Id.* at ¶ 17. GE assigned the debt owed by Ms. Joaquin to CACH. *See* Exhibit A, Livits Decl., ¶ 8. CACH is a subsidiary of SquareTwo Financial Corporation. Livits Decl., ¶ 1. She failed to make payments, and a debt collection lawsuit was filed to collect on the debt. Ex. B, ¶8. Ms. Joaquin brought the instant class action lawsuit alleging violations of the Fair Debt Collection Practices Act ("FDCPA").

Importantly, Ms. Joaquin's card member agreement with GE requires that any disputes arising out of and relating to her GE account be resolved through arbitration. *See*, Ex. 2 attached to Exhibit A. The arbitration clause extends to GE's assignees, which in this case, includes CACH. Ex. 2. As such, pursuant to the Federal Arbitration Act, this Court should compel Ms. Joaquin to resolve her claims through arbitration.

## II.
## STATEMENT OF FACTS

On or about May 17, 2012, Veronica Joaquin opened a credit card account with GE Capital Retail Bank ("GE"). Livits Decl., ¶ 7. Ms. Joaquin's credit card account and her relationship with GE and its assignees is and was governed by a Credit Card Account Agreement. Livits Decl., ¶ 7; Ex. 2. The Agreement was sent to Ms. Joaquin on or around the time she opened her account. *Id.* The Credit Card Account Agreement provides:

> RESOLVING A DISPUTE WITH ARBITRATION: PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.
>
> If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or dealers/merchants/retailers that accept the card or program sponsors if it relates to your account…
> \*\*\*
> YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION.
> \*\*\*
> This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA).

> You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section.

*See* Ex. 2.

Ms. Joaquin defaulted on her credit card payments. On or about September 23, 2014, GE assigned Veronica Joaquin's debt to CACH, whose parent company is SquareTwo Financial. Livits Decl., ¶ 8.

CACH, to collect the debt, hired the Mandarich Law Group (a co-defendant in this case) to bring an action against Ms. Joaquin. Livits Decl., ¶ 13. On behalf of CACH, Mandarich filed a lawsuit in the Superior Court of California, County of Santa Barbara, entitled *CACH, LLC v. Veronica Joaquin, an individual; and DOES 1 through 10 inclusive*, case no. 15CV01386 ("Underlying Case"). *See* State Court Complaint attached hereto as Exhibit B.

Ms. Joaquin filed the instant class action lawsuit on August 23, 2015. D.E. 1. The Complaint alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") Specifically, Ms. Joaquin complaints of communications allegedly made by Mandarich Law Group "at the request of CACH and SquareTwo Financial". *See* Plaintiff's Complaint, ¶30. According to Ms. Joaquin, Mandarich Law Group misidentified the original creditor on the account in this communications as Synchrony Bank, instead of GE Capital Retail

Bank in violation of various provisions of the FDCPA and California Civil Code §1788.17 ("Rosenthal Act"). Plaintiff's Complaint, ¶¶31-36; 56; 69. She attempts to state these claims not only on her own behalf but on behalf of a class of proposed similarly situated individuals. However, for the reasons stated below, Plaintiff cannot be a class representative and her individual claims must be arbitrated.

## III.
## ARGUMENT

### A. Ms. Joaquin's Claims are Subject to Binding Arbitration Under the Credit Card Account Agreement

The Federal Arbitration Act ("FAA") applies to the enforcement of arbitration provisions in contracts "involving commerce." 9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, Ms. Joaquin used her GE Credit Card to make purchases from a variety of merchants. *See*, Plaintiff's Complaint, ¶26; Statements on Account attached as Exhibit 1 to Exhibit A. Thus, the FAA applies to the GE Credit Card Account Agreement ("Credit Card Account Agreement").

Under the FAA, an agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their

terms so as to facilitate streamlined proceedings. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1720, 1748 (2011). The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id.* (internal citations and quotations omitted) "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

"Parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitration its disputes." *AT&T Mobility*, 131 S. Ct. at 1743 (internal citations omitted). The court must compel arbitration upon motion by a party to an arbitration agreement. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. §§ 3, 4. "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130.

## 1. Under Utah Law, the Arbitration Agreement is Valid

State contract law governs the interpretation of arbitration agreements, *see*, *e.g.*, *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 2014 WL 1396412, at *3 (N.D. Cal. 2014), and federal courts must apply the choice of law rules of the forum state. *Davis v. CACH, LLC*, 2015 U.S. Dist. LEXIS 25088 (N.D. Cal. Mar. 2, 2015) As the Agreement provides that "Utah law shall apply to the extent state law is relevant under the FAA", the court must look to the state law of Utah to determine whether the arbitration clause is valid. Generally speaking, "[i]t is the policy of the law in Utah to interpret contracts in favor of arbitration, in keeping with [its] policy of encouraging extrajudicial resolution of disputes when the parties have agreed not to litigate." *Central Florida Investments, Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 16, 40 P.3d 599 (internal quotation marks omitted). A written agreement to submit any existing or future controversy to arbitration is valid, enforceable, and irrevocable, except upon grounds existing at law or equity to set aside the agreement . . . .Utah Code Ann. § 78-31a-3 (1992). Of course, under Utah law, an unconscionable agreement is not enforceable. *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 459-62 (Utah 1983). To simplify the analysis, a majority of courts divide unconscionability doctrine into two branches: procedural unconscionability, which focuses on the formation of the agreement, and substantive unconscionability, which focuses on the agreement's contents. *Sosa v.*

*Paulos*, 924 P.2d 357, 360 (Utah 1996). In adopting this division, we stated in Resource Management that unconscionability includes "'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Id*. (internal citations omitted).

In the instant case, Ms. Joaquin acquired and used a credit card from GE according to the terms of the Credit Card Account Agreement. Livits Decl., ¶ 7. The arbitration clause in the Credit Card Account Agreement provides that "if either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or dealers/merchants/retailers that accept the card or program sponsors if it relates to your account." Ex. 2. These terms are not "one-sided" because they allow either party to elect to arbitrate a dispute. Further, the clause provides that "we will always pay arbitration costs, as well as your legal fees and costs, to the extent you prevail on claims you assert against us in an arbitration proceeding in which you have commenced." This clause provides a consumer additional relief not generally available in all causes of action. Lastly, the agreement gave Ms. Joaquin the right to reject the clause if she so chose. Ex. 1, Purchase Agreement, P. 3. Although the Credit Card Account Agreement is a contract of adhesion, it is not substantively unconscionable. Under Utah law, the arbitration clause is valid.

### 2. Ms. Joaquin's Claims Fall Within the Scope of the Arbitration Agreement

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 583; *Accord AT&T Technologies, Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986). An arbitration clause providing for the arbitration of disputes arising out of an agreement is construed broadly, to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

This action falls within the scope of the arbitration agreement. The clause specifically defines the claims that are subject to arbitration. Ex. 2, P. 2-3.

·What claims are subject to arbitration

1. If either you or we make a demand for arbitration, you and we must arbitrate **any dispute or claim between you or any other user of your account, and us, your affiliates, agents,** and/or dealers/merchants/retails that accept the card or program sponsors **if it relates to your account,** except as noted below[1].

---

[1] The clause goes on to state exceptions that relate to the institution of an individual case in small claims court or a collection action. However, none of those exceptions are applicable here as this action is in U.S. District Court and was not filed to collect a debt from Ms. Joaquin..

The instant action specifically involves a dispute between CACH, its agents (Mandarich Law Group), and affiliates (SquareTwo Financial). Further, the action "relates to the account" in that Ms. Joaquin complains of wrongdoing in the collection of the balance on the account. Specifically, she complaints of the misidentification of the original creditor on the account. Thus, there is no doubt that the dispute "relates to the account" and as such, is within the scope of the arbitration agreement.

### 3. CACH is Entitled to Invoke the Arbitration Clause as GE's Assignee

A non-signatory to an arbitration agreement can enforce the terms of the agreement under traditional principles of contract and agency law. *See Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 722, n.3 (2006); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006), citing *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 195 (3d Cir. 2001). Thus, an assignee can enforce an arbitration clause against a signatory to a contract. *See Comer v. Micor*, 436 F.3d at 1101; *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-1047 (9th Cir. 1993).

The Agreement specifically provides that either GE or Ms. Joaquin can make a demand for arbitration. Livits Decl., ¶12; Ex. 1, Purchase Agreement, P. 2. It also provides that GE "may sell, assign or transfer any or all of [its] rights or duties under this Agreement or your account. . ." GE sold the account to CACH

via a purchase and sale agreement dated September 23, 2014. Livits Decl., ¶ 8. The purchase agreement provides that GE sold "all right, title and interest in and to the Receivables with respect to which [CACH] received a Notification File. . ." Livits Decl., ¶8, *see* Ex. 1, Purchase Agreement, ¶2.1. Ms. Joaquin's account was contained within the Notification File. As such, CACH is entitled to compel arbitration in this action, and hereby gives notice of its desire for same pursuant to the Agreement. *See* Livits Decl., ¶12; Ex. 1, Purchase Agreement, P. 3 ¶1, Bill of Sale and Notification File.

### B. Ms. Joaquin's Claims Must Proceed to Arbitration on an Individual Basis

"Underscoring the consensual nature of private dispute resolution … parties are 'generally free to structure their arbitration agreements as they see fit.'" *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 683 (2010)(quoting *Mastobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995). Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *AT&T Mobility v. Concepcion*, 131 S. Ct. at 1748-49 (citations omitted). "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 559 U.S. at 684.

Here, the Credit Card Account Agreement does not agree to class arbitration. In fact, it specifically states that a class arbitration will not occur and that the parties can only arbitrate claims on an individual basis. Ex. 1, Purchase Agreement, Ex. 2, P. 3. The arbitration must proceed on an individual basis.

### C. This Action Must Be Stayed

Section 3 of the FAA provides that the district court shall stay an action "until such arbitration has been had in accordance with the terms of the [arbitration] agreement." 9 U.S.C. § 3. This action must be stayed in this district court while the parties arbitrate Ms. Joaquin's claims.

## IV.
## CONCLUSION

Ms. Joaquin agreed to be bound by the terms of the GE Credit Card Account Agreement when she opened and utilized the account. The Credit Card Account Agreement allows CACH, as an assignee of GE, make a demand for arbitration in any action relating to the account. Further, claims against agents and assigns are also subject to arbitration. As such, this Court must stay this action and order Ms. Joaquin to arbitrate her claims individually.

Dated:  October 8, 2015          MESSER, STILP & STRICKLER, LTD.

                                           By     /s/Stephanie A. Strickler
                                           Attorney for Defendants
                                           SQUARETWO FINANCIAL CORPORATION
                                           CACH, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of October 2015, a true and accurate copy of the foregoing **Defendants SQUARETWO FINANCIAL CORPORATION and CACH, LLC's Notice of Motion and Motion to Compel Arbitration and to Stay Claims; Memorandum of Points and Authorities in Support Thereof** was filed with the Clerk of Court using the ECF system which will send notification of such filing to the attorneys of record.

By    /s/Stephanie A. Strickler
Attorney for Defendants
SQUARETWO FINANCIAL CORPORATION
CACH, LLC